## A. P. POND v. LUTHER BAKER & W. H. STILES.

*Attachments. Lessee. Sheriff's Return. Damages.* R. L.
s. 1190–1.

1. Property held by one officer under attachment cannot lawfully be taken on process by another officer; but when attached, receipted for, and left in the possession of the debtor it can be so taken. So property left in possession of the debtor, which can be secured for forty days by leaving a copy of the writ in the town clerk's office, can be lawfully taken by a second officer, after the expiration of the forty days. So the second attachment will be held valid, where it does not appear from the case that the property was charged on an execution seasonably issued on the prior judgment.

2. RETURN. PROPERTY LEASED. The plaintiff as officer attached certain property in the possession of a lessee. The return was, in part, " I served this writ by attaching as the property of the within named defendant all the real estate in said town of M——, etc., all the neat cattle, horses, hogs and sheep, cows, oxen, etc., now on or kept on said farms, lands, and premises, or any part thereof, by the said G. M. Campbell; and on the same day I gave the said defendant, and also the said G. M. Campbell, lessee to the occupancy of said farms, lands, and premises, immediate and personal notice," etc. The defendant had only one farm leased to C.; and on it were twenty-one cows, nineteen yearlings, fifteen calves, one horse, etc., leased; *Held*, that in view of the actual condition of the property, the live stock on the farm was legally attached; and that the return was sufficient to inform the defendant and any reasonable, prudent person dealing with him, that the property was under attachment.

3. ASSIGNEE. The question, whether the plaintiff should have taken possession of the property immediately on the expiration of the lease, is not involved, as the defendants, who have converted the property in the case, are the assignees of the defendant in the original case, and stand only on his rights; and the attachment was valid as to him without a change of possession.

4. LESSOR. The interest which the lessor had in the hay and grain raised on the farm by the lessee was not attached, as it was not in existence at the time of attachment, although by the terms of the lease, the hay was substituted for the hay that was legally attached.

5. DAMAGES. The damages are to be estimated at the time of the conversion, not at the time of the attachment.

TRESPASS AND TROVER. Plea, general issue. Trial by court, September Term, 1884, Franklin County, ROYCE, Ch. J., presiding. Judgment for the defendants.

It appeared: On October 1, 1878, and for some time previous thereto, one John Campbell was the owner of a farm

in Montgomery, known as the Kelton farm; and on October 1, the personal property declared for was on said farm and in his possession. On October 1, John Campbell leased said farm to G. M. Campbell for one year, by a verbal lease. The lessee was to have the use of one horse, twenty-one cows, one double wagon, one pair of work harnesses, one set of traverse sleds, one horse rake, one mowing machine, two plows, one drag, one grindstone, five shoats, and the sugar tools then on said farm (and returned as attached by the plaintiff) during the said term, and the right to use the horse power, thresher and saws to do his own threshing and saw his own wood; and all the products of the farm, except the hay, were to be equally divided between the lessor and lessee. The lessee went into the possession of the said farm and personal property under said lease on October 2, 1878, and continued in possession during said term. The hay grown on said farm in 1878 was cut and stored on said farm by John Campbell, and was fed to the stock on said farm in the winter of 1878 and 1879; and it was agreed at the time said lease was made, that G. M. Campbell should cut and store the hay that might grow on said farm in 1879, for the benefit of John Campbell. At the time said lease was made, John Campbell was the owner of nineteen yearling heifers, which were then on said farm, and the same that were claimed to have been attached by the plaintiff; and it was agreed that said heifers should be kept on said farm, and those that might come in should be milked by G. M. Campbell, with the cows that were leased, and the products of the whole equally divided; and the lessor and lessee were at equal expense in hiring help to take care of said heifers and other stock, during the winter of 1878-9.

Thirteen of said heifers did come in in the spring of 1879, and were milked by G. M. Campbell during the time he occupied said farm.

John Campbell, at the time the lease was made, reserved

the right to occupy a portion of the house on said farm and resided therein during the continuance of the lease. On November 25, 1878, George Wilkins prayed out a writ of attachment in his favor and against John Campbell, and the defendant Stiles as trustee, returnable to the April Term, 1879, of the Lamoille County Court, demanding $6,000 damages; and the same was placed in the plaintiff's hands, who was then a deputy sheriff for the County of Franklin, for service. On November 29, 1878, the plaintiff served said writ in the manner indicated by the original and amended returns made upon the same.

It appeared from a copy of an assignment and bonds filed in the Probate Court, that on August 16, 1879, the said John Campbell executed an assignment under the provisions of ch. 67 of the General Statutes, and therein selected and named the defendants assignees. They accepted said appointment and filed the bonds in the Probate Court.

At the time said assignment was executed said property all remained on said farm. Early in the morning of October 3, 1879, the defendants removed all the property so attached by the plaintiff off from said farm, and took and have ever since retained the possession of the same.

The other facts are sufficiently stated in the opinion.

*H. E. Rustedt, H. C. Adams,* and *Cross & Start,* for the plaintiff.

The officer's return was sufficient. All that is required is, that the property be described with reasonable certainty, that the defendant and any person having any dealings with him, aided by inquiries suggested by the return, may identify the property. *Bucklin* v. *Crampton,* 20 Vt. 261; *Fullam* v. *Stearns,* 30 Vt. 457; *Harding* v. *Coburn,* 12 Met. 333; *Winslow* v. *Merchants Ins Co.* 4 Met. 315; *Burditt* v. *Hunt,* 25 Me. 419; *Willey* v. *Snyder,* 34 Mich. 60. *See* this case reported in 55 Vt. 400; and in 56 Vt. 674.

The property, although in the possession of a lessee, was

legally attached. Gen. Stat. c. 33, sec. 32; *Brigham* v. *Avery*, 48 Vt. 602.

The defendants, as assignees, stand in the place of John Campbell, the lessor. *Pond* v. *Baker*, 56 Vt. 674; Gen. Stat. c. 68, s. 10.

The rule of damages is the value of the property at the time of the conversion. 1 Add. Torts, 457; *Thrall* v. *Lathrop*, 30 Vt. 307; 38 Vt. 566.

*S. H. Royce* and *E. H. Powell*, for defendants.

The property was under attachment when the plaintiff served his writ, and his attachment was, therefore, invalid, the first being made by another officer. *West River Bank* v. *Gorham*, 38 Vt. 649; *Rogers* v. *Fairfield*, 36 Vt. 641; *Vinton* v. *Bradford*, 13 Mass. 114; *Robinson* v. *Ensign*, 6 Gray, 300.

The amendment adds nothing to the return. The property must be described with reasonable certainty; the statute expressly requires that it shall be described. R. L. s. 881; Drake Attach. s. 204.

It must be " described with a good degree of exactness and particularity in order to show identity." SHAW, Ch. J., in *Baxter* v. *Rice*, 21 Pick. 197; *Brooks* v. *Farr*, 51 Vt. 396; *Jewett* v. *Guyer*, 38 Vt. 209; *Pond* v. *Baker*, 55 Vt. 400.

The plaintiff attached the reversionary interest of the lessor. R. L. s. 1191. He could hold only what he attached. *First Ward Nat. Bk.* v. *Thomas*, 125 Mass. 278; *Jenks* v. *Silloway*, 30 Vt. 690.

The plaintiff had only an attachment lien. Trover will not lie. 6 Wait Act. & Def. 151; *Clark* v. *Draper*, 19 N. H. 419; *Winship* v. *Neale*, 10 Gray, 382; *Dubois* v. *Harcourt*, 20 Wend. 41.

The property should have been attached as the lessor's, and described as in the hands of the lessee. *Meuley* v. *Zeigler*, 23 Tex. 88; Drake Attach. ss. 207, 356; *Clay* v. *Neilson*, 5 Rand. 596.

The assignment was good as against a prior invalid at-

tachment.  *Dey* v. *Dunham*, 2 Johns. Ch. 182; Burr. Assts.
239; *Hall* v. *Dennison*, 17 Vt. 310; *Kellogg* v. *Slawson*, 15
Barb. 56; *Swift* v. *Thompson*, 9 Conn. 63.

The opinion of the court was delivered by

Ross, J.   I. The defendants contend that the attachment
made by the plaintiff, if sufficient in other respects, was in-
operative to create any lien in his favor on a portion of the
property returned by him as attached, for the reason, that it
was then under an attachment made by H. B. Ladd, as con-
stable of Montgomery.   Ladd's attachment was made on
the 18th of July, 1878, by leaving a copy of the writ with
his return thereon in the town clerk's office.   It is settled
that while such an attachment of personal property exists,
the same property cannot lawfully be attached by another
officer, either by leaving a proper copy of his process in the
town clerk's office, or by taking possession of the property.
*Beach* v. *Abbott,* 4 Vt. 605; *Rood* v. *Scott,* 5 Vt. 263; *West
River Bank* v. *Gorham,* 38 Vt. 649.   But within forty days
of the attachment made by H. B. Ladd, the defendant pro-
cured a receiptor for a part of the personal property so at-
tached, and the receiptor allowed the property receipted to
remain in the possession of the defendant in the writ.   The
property thus situated could lawfully be attached by the
plaintiff.   *Beach* v. *Abbott, supra.*   Certain of the remain-
der of the personal property attached by Ladd, by copy in
the town clerk's office, he was required to take possession
of within forty days after making the attachment, or his
attachment became void as to subsequent attaching credit-
ors, and *bona fide* purchasers.   No. 70 of Acts of 1876.
Ladd did not take possession thereof, and this part of the
property could lawfully be attached by the plaintiff.   A
portion of the property was of such a character that Ladd's
attachment thereof, by copy in the town clerk's office, re-
mained in force, notwithstanding he did not take possession
thereof.   But in regard to this portion of the property the

case fails to find, that execution was seasonably taken out on the judgment recovered in the suit, in which the attachment was made by Ladd, or that the property was lawfully charged on said execution so as to preserve the lien created by the attachment. Hence the attachment made by Ladd does not, on the facts found by the County Court, interfere with the attachment made by the plaintiff, and the question is, as to the sufficiency of what was done by the plaintiff to create a valid attachment of the property in suit.

II. Various objections are urged to the validity of the attempted attachment of the property in suit by the plaintiff. It appears that John Campbell, the defendant in the suit in which the attachment was made, on the first day of October, 1878, leased his farm and most of the property in suit to G. M. Campbell for one year, and he took possession October 2, 1878. The attachment by the plaintiff was made the 29th day of November, 1878. The validity of this attachment depends upon the amended return upon the writ, on which it was made. The defendants contend that the return does not sufficiently describe the property to make a valid attachment thereof; that it does not attach it as the property of the defendant John Campbell; and that certain of the property was not included in the lease to G. M. Campbell. The lessor's interest in property leased can only be attached in the manner provided by the statute, by giving the lessee a duly authenticated copy of the writ on which the attachment is made, with the return of the officer thereon describing it. R. L. sec. 1190. *Brigham* v. *Avery & Belknap*, 48 Vt. 602. The officer's return in this case was not commended for clearness and perspicuity when before this court between these same parties as reported in 55 Vt. 400. This court then refused to pass upon the sufficiency of the plaintiff's return to attach the property in the hands of the lessee, G. M. Campbell. It must be confessed that the return is by no means a model, to be commended to officers to follow in the future. There

is much in it that is apparently confusing, by its attempt to cover everything and everybody. In this suit the plaintiff seeks to recover mainly the property which he claims to have attached in the hands of G. M. Campbell as the lessee thereof from the defendant John Campbell, and for that purpose, in fairness, the return should be read with reference to said lessee and defendant John Campbell, and all other indefinitely described persons should be eliminated therefrom. Thus eliminated, the return will show what the plaintiff claims to have done with reference to the attachment of the property in the hands of G. M. Campbell, as the lessee of the defendant. It will, when the extraneous matter, so far as relates to G. M. Campbell and John Campbell, is eliminated, read as follows:

" At Montgomery, on the 29th day of November, A. D. 1878, I served this writ by attaching as the property of the within named defendant all the real estate in said town of Montgomery. And on the same day I attached all the hay, grain in the straw, corn, corn in the cob, and in the stalk, potatoes in the cellar, and implements for the manufacture of maple sugar, in the house, barns, sheds, cellars, and other buildings on the farms, lands, and premises occupied by one G. M. Campbell, as tenant to, or claiming to be tenant to, the said defendant, situated in Montgomery aforesaid; and I also, on the same day, attached all the neat cattle, horses, hogs, and sheep, cows, oxen, young cattle, and all mares, geldings, stallions, colts and weanling pigs, lambs, now on, or kept on, said farms, lands, and premises, or any part thereof by the said G. M. Campbell; and on the same day I gave the said defendant, and also the said G. M. Campbell, lessee to the occupancy of said farms, lands, and premises, immediate and personal notice of said attachment; I also on the same day attached three double wagons, four pair traverse sleds, two pair double harnesses, one single harness, one horse power and thresher, saw rig and separator, one circular saw, one single sleigh, two mowing machines, one horse rake, one tedder, five plows, three drags, one grindstone, all of which personal property I found in the hands and possession of said G. M. Campbell, who claims to hold the same as lessee of said defendant,

and on the same day I delivered to the said G. M. Campbell, a true and attested copy of this writ of attachment with a list of the property so attached thereon endorsed, with my return hereon thereon endorsed."

As said by VEAZEY, J., in the 55 Vt. Rep., when this return was before this court: "Reasonable intendments are made in favor of officers' returns. The presumption of law is in favor of their legality. *Drake* v. *Mooney*, 31 Vt. 619. A valid lien is created by attachment by copy in town clerk's office when the return is sufficiently precise to show the identity of the property. *Fullam* v. *Stearns*, 30 Vt. 443." The same intendments and presumption in favor of the return apply when the attachment is of property of the lessor in the hands of the lessee by copy delivered to the lessee. Giving force and efficacy to this rule of construction, we think the plaintiff's return sufficiently shows that the property attempted to be attached in the hands of the lessee, was the property of the lessor, John Campbell, the defendant in the writ. But the defendants contend that the statement in the return, "all the hay, grain in the straw, &c., all the neat cattle, horses, hogs and sheep, cows, oxen, young cattle, and all mares, &c., now on or kept on said farms, &c., by the said G. M. Campbell," is too indefinite;—that they should be described by number, quantity, or other more definite specification. The rule in this State, which has prevailed, in regard to the degree of definiteness of specification and description in the return of an officer of property attached, is that laid down in *Bucklin* v. *Crampton*, 20 Vt. 261.

It is there stated by HALL, J., as follows: "In order to give an officer the constructive possession of property attached by leaving a copy with the town clerk, it is undoubtedly true, that it must be described with reasonable certainty, but such reasonable certainty is all that is required. The sufficiency of the return, in this respect, can only be determined by applying it to the actual state of the debtor's prop-

erty at the time. If the debtor have no such property as that described, the attachment can have no operation. If he have such property the question is whether it has been sufficiently pointed out to enable the debtor, and those with whom he may deal, to be informed that it is attached." Apply these tests to the return of the plaintiff.

The actual state of the property of the debtor in controversy at the time of the attachment was as follows: He had but one farm in the town of Montgomery, leased to G. M. Campbell. If he had had three or four farms so leased the plaintiff's return might, and doubtless should, receive very different consideration. On this farm the debtor had, at that time, 15 calves, 19 yearlings, 21 cows, one horse, and five pigs, besides the wagons, sleighs, thresher, &c. The farm is described as located in Montgomery, and in the occupancy of G. M. Campbell. This description of the farm is sufficient to enable the debtor, and any one who might have occasion to deal concerning it, to identify it. The cows then on the farm would have been no more identified, nor would the debtor, or those who might have occasion to deal with him, have known any better or more certainly, what cows were attached, if the plaintiff had described them as 21 cows rather than as all the cows on the farm. The use of the numerical number would have added nothing to their information in this respect. If the debtor had then had more than 21 cows on the farm, the use of the number 21 in the plaintiff's return would have given additional uncertainty to their identification, and lessened the information furnished by the return of the particular cows attached. In the then state of the debtor's property the word "all" conveyed as much and as definite information of the cows attached as the use of 21 would have done. The same reasoning is applicable to the other live stock then on the farm. To identify the property described in either case, extrinsic evidence, or evidence outside of the return, would have to be resorted to: namely, evidence to show the particular cows

that made up the 21 cows, or all the cows then on the farm, and named in the return. While a return stating that the officer attached all the personal property of the kind named in a *town* has been held too indefinite to create a valid attachment,—*Paul* v. *Burton*, 32 Vt. 148; *Rogers* v. *Fairfield*, 36 Vt. 641,—it has not, so far as we are informed, ever been held in this State, or elsewhere, that a description in a return or conveyance was inoperative because of indefiniteness, which described the property, or all the property of the particular kind named. in the possession of a particular person, on a designated farm in a town. In *Winslow* v. *Merchants Ins. Co.* 4 Met. 306, it is held that a mortgage of all the goods, &c., in and about a certain building, is valid as to all articles that can be identified. The same is held in *Harding* v. *Coburn*, 12 Met. 333, and *Burditt* v. *Hunt*, 25 Me. 419. We think that the description of the live stock in the plaintiff's return is sufficient to comply with the rule enunciated in *Bucklin* v. *Crampton, supra*, that, when read with reference to the situation and condition of John Campbell's property in. the possession of G. M. Campbell as his lessee on the farm leased, it was sufficient to inform John Campbell, or any reasonably prudent person who might have occasion to deal with him in regard to any of the same, that it was under attachment by the plaintiff. We also think that the thirteen yearling heifers which came in, and the horse power, thresher, and saws,were, by the contract, included in the lease. The lessee was entitled to their possession and use during the term of the lease. The plaintiff would have been a trespasser if he had undertaken to remove them from the lessee's possession. The property, other than the live stock in the lessee's possession is described by number as well as kind. It is not seriously contended that the return insufficiently describes this, and yet it could be identified only by evidence extrinsic to the return.

III. It is further contended that the plaintiff lost the lien

created by his attachment by his failure to take possession of the property immediately upon the expiration of the lease to G. M. Campbell. On the facts found, the lease expired on the first or second day of October, 1879. When the attachment was made the plaintiff asked G. M. Campbell, in the presence of John Campbell, what property was included in the lease and when the lease expired. G. M. Campbell replied that all the personal property on the farm was included in the lease and that the lease expired October 3, 1879. The statute R. L. ss. 1189, 1190, 1191, authorizing an attachment and sale of the interest of the lessor in property leased, while in the lessee's possession, is silent in regard to the duty of the officer, or what is necessary to be done by him to preserve the attachment, if the lease, or bailment, should expire before the sale. It is claimed by the defendants that the officer must take possession of the property the moment the lease expires, or the lien created by the attachment is lost. There seems to be force in the contention, under the decisions in this State, that, if the property pending the attachment is released from the operation of the lease, and returns to the possession of the lessor, it becomes subject to attachment by other creditors of the lessor, and to sale to *bona fide* purchasers. But how the law should be held on this (supposed) state of facts, we have no occasion to inquire nor decide. The property has not returned to the possession of the lessor and then been attached by other creditors of the lessor, nor been purchased by *bona fide* purchasers. On the 18th day of July, 1879, John Campbell assigned all his property to the defendants for the benefit of all his creditors. The defendants, early on the morning of October 3, 1879, took possession of all the property attached, removed it from the farm, and have converted most of it into money. The plaintiff appeared at the farm Oct. 3, 1879—after the defendants had taken possession of the property and removed it—and demanded the property of the

lessee, and subsequently, and before bringing this suit, of the defendants.

If it was the duty of the plaintiff to ascertain the time when the lease expired and take possession of the property attached, at the expiration of the lease, to preserve the lien created by the attachment in the hands of the lessee, we think all that can be required of the officer, is the exercise of reasonable and prudent inquiry to ascertain the time when the lease expires, and reasonable diligence to take possession of the property at the expiration of the lease. This the plaintiff did. The lease was unwritten. He inquired of the lessee in the presence of the lessor. He was present to take possession of the property on the very day on which he was informed the lease expired. Any stricter rule would be open to the practice of frequent and gross frauds on the attaching officer and creditor. It may well be questioned whether, under the law, when an attachment is made of property in the hands of a bailee, pledgee, or lessee, such bailee, pledgee, or lessee, can lawfully deliver the property so attached, on the termination of the bailment, pledge, or lease, to the owner, whether by the attachment the law has not impounded it in his hands, and whether he is not under a legal duty at least to notify the officer of its termination and call upon him to take possession. But, on the facts of this case, there is another satisfactory answer to this contention. The defendants are neither attaching creditors, nor *bona fide* purchasers of the property. *Stickney* v. *Crane,* 35 Vt. 88. They occupy, against the plaintiff, in that respect, no better position than their assignor, John Campbell. Against him the plaintiff's attachment of the property continued valid whether made by a legally authenticated copy of the writ with his return delivered to G. M. Campbell as lessee, or by like copy and return lodged in the town clerk's office, although he did not take actual possession of the personal property so attached. No. 70, Acts 1878 ; *Blodgett* v. *Adams,* 24 Vt. 23. Such attachments

being legal when made, created a legal lien on the property attached, which continued in force against the defendant without more being done by the officer until thirty days after final judgment in the suit on which the attachment was made. Hence the plaintiff's attachment of the calves, —which were not included in the lease, as agreed upon by the parties thereto,—by a copy of the writ in the town clerk's office was valid against these defendants. Therefore it is unnecessary to consider whether John Campbell and his assignees are estopped by the statement of G. M. Campbell that the calves were included in the lease, and that the lease expired Oct. 3, 1879. The execution on the judgment in favor of the attaching creditor was seasonably taken out and placed in the plaintiff's hands for collection, and the property attached duly demanded and charged thereon. This perfected the right of the plaintiff to recover the value of the property thus legally attached and charged in execution against John Campbell. The hay and grain, raised on the farm by the lessee under the lease, was not in existence when the attachment was made, and therefore could not be attached. Although by the terms of the lease, the hay, cut by the lessee in 1879, was substituted for the hay on the premises, when the lease was agreed upon, which latter was legally attached by the plaintiff, it was not attached, and the plaintiff never acquired any right to it, and cannot recover for its conversion, nor for the conversion of John Campbell's half of the corn and oats raised on the farm that season.

IV. The only remaining question is, whether the plaintiff is entitled to recover the value of John Campbell's reversionary interest in the property attached at the date of the attachment, or the value of the property attached when converted by the defendants. We think he is entitled to recover the value of the property when converted. It is true, by the provisions of the statute, only the interest of the lessor in property leased can be attached

and sold. But when before the sale the property is discharged from the lease, that interest is the entire value of the property. It is the value of his interest in the property at the time of the sale, and not at the time of its attachment, which the creditor is entitled to take and apply in satisfaction, or towards the satisfaction of the judgment.

The result is, the *pro forma* judgment is reversed and judgment rendered for the plaintiff to recover of the defendants the sum of $1,260.77, with interest, and his costs.